UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
NOEL BLACKMAN,

                Petitioner,

                                    MEMORANDUM AND ORDER
                                    16-CR-0089(JS)

    -against-

UNITED STATES OF AMERICA,

                Respondent.
----------------------------------X
APPEARANCES
For Petitioner:      Noel Blackman, pro se
                        #89102-053
                        Moshannon Valley Correctional Institution
                        555 Geo Drive
                        Philipsburg, PA 16866

For Respondent:      Bradley T. King, Esq.
                        United States Attorney's Office
                        Eastern District of New York
                        610 Federal Plaza
                        Central Islip, NY 11722

SEYBERT, District Judge:

        Noel Blackman ("Petitioner") pled guilty to Conspiracy to Distribute and Possess with Intent to Distribute Oxycodone in violation of 21 U.S.C. §§ 846, 841(b)(1)(C), and 841(a)(1), pursuant to a Plea Agreement with the Government that included a waiver of his right to appeal or collaterally attack his conviction or sentence. (See J., Docket Entry 68; Plea Agreement, Docket Entry 73-1.) Following his guilty plea, Petitioner was sentenced to a below Sentencing Guidelines term of fifty (50) months of

imprisonment followed by three (3) years of supervised release. (J. at 2-3.) On March 26, 2018, Petitioner, acting pro se, petitioned this Court to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255. (See Pet., Docket Entry 70.) Specifically, Petitioner contends that his sentence violates the Constitution as the Court failed to apply the "safety valve" provision of Section 5C1.2 of the United States Sentencing Guidelines when determining his sentence and that he received ineffective assistance of counsel when his attorney failed to raise this argument. (Pet. at 2.) For the following reasons, the Petition is DENIED.

BACKGROUND

In February 2016, Petitioner was indicted for conspiring to distribute and possess with intent to distribute a controlled substance, the substance being Oxycodone. (See Indict., Docket Entry 21.) Ultimately, Petitioner entered into a Plea Agreement in which he agreed to plead guilty to Count One of the Indictment, charging Conspiracy to Distribute and Possess with Intent to Distribute Oxycodone in violation of 21 U.S.C. §§ 846, 841(b)(1)(C), and 841(a)(1), which carried a maximum jail sentence of twenty (20) years of imprisonment. (See J. at 1; Plea Agreement ¶ 1.) According to the Plea Agreement, Petitioner's total offense level was 28, which included an enhancement as he "acted as an organizer, leader, manager, or supervisor of criminal activity."

2

(Plea Agreement ¶ 2.) However, "[i]f the defendant clearly demonstrate[d] acceptance of responsibility, through allocution and subsequent conduct prior to the imposition of [the] sentence" and entered a guilty plea on or before August 31, 2016, his offense level would decrease to 25. (Plea Agreement ¶ 2.) Accordingly, this adjusted offense level resulted in a Sentencing Guidelines range of fifty seven (57) to seventy one (71) months of imprisonment. (Plea Agreement ¶ 2.) Through the Plea Agreement, Petitioner "stipulate[d] to the [ ] Guidelines calculation." (Plea Agreement ¶ 2.) In addition, the Plea Agreement contained an appellate waiver, in which Petitioner agreed not to appeal or collaterally attack his conviction if he received a sentence of seventy eight (78) months or less. (Plea Agreement ¶ 4.)

On August 24, 2016, Petitioner entered his guilty plea in the United States District Court for the Eastern District of New York in accordance with his Plea Agreement. (See, Minute Entry, Docket Entry 37 .) After swearing Petitioner in, the Court ensured that Petitioner was competent to enter the plea, understood the proceedings, and explained the rights Petitioner was forfeiting by pleading guilty. (Plea Tr. 2:24-3:22, 15:20-16:5.) The Plea Agreement was discussed and the waiver provisions contained in the agreement were placed on the record. (Plea Tr. 4:19-5:14.) The Court explained the range of sentences Petitioner faced, specifically noting that he was facing a maximum sentence

3

of twenty years of imprisonment.  (Plea Tr. 4:4-4:12.)  In addition, the Court confirmed that the estimated Sentencing Guidelines range was between fifty-seven (57) and seventy-one (71) months if Petitioner received credit for acceptance of responsibility, and that Petitioner was waiving his appellate rights if he was sentenced to seventy-eight (78) months or less. (Plea Tr. 5:10-7:8.)  Petitioner indicated that he understood the parameters of the Plea Agreement.  (Plea Tr. 6:5-6:17, 7:3-8:3.) Petitioner stated that he was entering the plea because he was in fact guilty and that he had not been threatened to plead guilty. (Plea Tr. 12:1-12:6.)  In addition, Petitioner admitted to his criminal conduct, stating:

> While I was licensed as a physician in New York State, I agreed with other individuals to write prescriptions for oxycodone to individuals whom I knew, based upon the standard of medical practice that was and generally is recognized and accepted in New York State. I had no need or for a legitimate medical need for oxycodone.  I wrote these prescriptions in exchange for cash payments.

(Plea Tr. 12:10-12:18.)  The Court accepted the guilty plea and adjourned the matter for sentencing.  (Plea Tr. 14:8-16:6.)

Prior to sentencing, a Presentence Investigation Report ("PSR") was prepared by the Probation Office.  (See, PSR, Docket Entry 190.)  Petitioner returned to this Court for his sentencing proceedings on May 12, 2017.  (See, Minute Entry, Docket Entry

4

66.) Before imposing sentence, the Court stated that it considered the Presentence Investigation Report, the Plea Agreement, the Indictment, and letters sent on Petitioner's behalf. (Sentencing Tr. 3:24-4:12.) The Court confirmed that defense counsel and the Government agreed that the Sentencing Guidelines range was fifty seven (57) to seventy one (71) months of imprisonment. (Sentencing Tr. 5:16-5:22.) After hearing arguments from defense counsel and the Government, as well as a statement from Petitioner, the Court imposed a below Guidelines sentence of fifty (50) months of imprisonment. (Sentencing Tr. 55:16-56:3.)

Notwithstanding the abovementioned waiver, Petitioner filed the instant Petition to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 on March 26, 2018. (See Pet.) Petitioner contends that his sentence violates the Constitution as the Court did not apply Section 5C1.2 of the United States Sentencing Guidelines when sentencing Petitioner and that he received ineffective assistance of counsel when his attorney failed to raise this argument. (See Pet. at 2.) The Government filed a response on July 2, 2018, arguing that Petitioner's claims are procedurally barred by the waiver contained in the Plea Agreement and without merit. (See Resp't's Br., Docket Entry 73.) Petitioner filed a reply on July 23, 2018, reinforcing the claims made in the original Petition. (See Pet'r's Reply, Docket Entry 74.)

5

DISCUSSION

The Court will first address the applicable legal standard before turning to the merits of the Petition.

I. Section 2255 Legal Standard

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, 562 U.S. 86, 91, 131 S. Ct. 770, 780, 178 L. Ed. 2d 624 (2011). To obtain relief under § 2255, a petitioner must show "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Therefore, a collateral attack on a conviction or sentence is available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428, 82 S. Ct. 468, 471, 7 L. Ed. 2d 417 (1962)). When determining whether to grant relief, "the scope of review on a § 2255 motion should be narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources." Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996)

(internal quotation marks and citations omitted). Accordingly, habeas corpus proceedings are an "asymmetrical enterprise in which a prisoner seeks to overturn a presumptively valid judgment of conviction." Pinkney v. Keane, 920 F.2d 1090, 1094 (2d Cir. 1990). As such, the petitioner has the burden of proving his claims by a preponderance of the evidence. Skaftouros v. United States, 667 F.3d 144, 158 (2d Cir. 2011).

As Petitioner's submissions were filed pro se, the Court will liberally construe them "'to raise the strongest arguments that they suggest.'" Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Nonetheless, this does not excuse Petitioner "'from comply[ing] with relevant rules of procedural and substantive law.'" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)).

II. Applicability of Waiver

It is "well established that a knowing and voluntary waiver of the right to appeal is generally enforceable." United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001); Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001) (determining that waivers of collateral attack under § 2255 are enforceable). Therefore, "'[w]hen the record clearly demonstrates that [a] defendant's waiver of [the] right to appeal a sentence within an agreed Guidelines range was knowing and voluntary,' the

7

waiver will be enforced." Sanchez v. United States, No. 10-CV-3653, 2012 WL 3150581, at *1 (E.D.N.Y. Jul. 31, 2012) (quoting United States v. Monzon, 359 F.3d 110, 116 (2d Cir. 2004)). However, the Second Circuit has held that there are instances where a petitioner may appeal or collaterally attack a conviction notwithstanding the existence of an appeal waiver, including: "(1) the arbitrary practice of sentencing without proffered reasons which . . . could in some cases amount to an abdication of judicial responsibility subject to mandamus, . . . (2) the defendant's right to appeal on the grounds of ineffective assistance of counsel, . . .; and (3) the arguably unconstitutional consideration of naturalized status." United States v. Rosa, 123 F.3d 94, 98 (2d Cir. 1997) (internal quotation marks and citations omitted). Therefore, "where there is a claim of ineffective assistance of counsel that calls into question the legitimacy of the waiver itself, the waiver will not foreclose a section 2255 petition." Riggi v. United States, No. 04-CV-7852, 2007 WL 1933934, at *5 (S.D.N.Y. Jul. 5, 2007). A claim of ineffective assistance of counsel will not circumvent all appeal waivers; rather, "a petitioner [must] demonstrate that he unknowingly or involuntarily agreed to the plea directly owing to the ineffective assistance of his counsel." Ramirez-Hernandez v. United States, No. 09-CV-4107, 2012 WL 1838286, at *4 (E.D.N.Y. May 12, 2012).

Here, Petitioner stipulated that he would not file an appeal or otherwise challenge his conviction or sentence in the event that the Court sentenced him to a term of imprisonment of seventy eight (78) months or less. (See Plea Agreement ¶ 4.) Petitioner then received a sentence of fifty (50) months of incarceration, followed by three (3) years of supervised release, a term within the scope of the appeal waiver. (J. at 2-3.) The plain terms of the waiver thus bar the instant Petition.

In addition, there is no evidence that the guilty plea or the appeal waiver was entered into in an involuntary and unknowing manner, nor does Petitioner claim as such. Upon reviewing the underlying record, the Court finds the guilty plea valid and the appeal waiver enforceable; therefore, Petitioner's claims have been waived. The Court notes that though Petitioner raises an ineffective assistance of counsel claim, this claim does not cast doubt onto the validity of the waiver itself. Thus, the Court finds that this claim is not an ineffective assistance claim that will circumvent the appeal waiver.

Notwithstanding this bar to Petitioner's claims, the Court proceeds to discuss the substance of Petitioner's claims, finding that they do not provide a basis for relief.

III. Sentencing Guidelines Calculation

Petitioner contends that his sentence was calculated in a "manner that violated the Fifth and Sixth Amendment of the United

9

States Constitution, when the application of the 'safety valve' provision of 5C1.2 [of] the United States Sentencing Guidelines was not considered and/or factored into his Guideline calculation." (Pet. at 2.)

Section 5C1.2 of the Sentencing Guidelines, commonly referred to as the safety-valve provision, "exempts a defendant from a statutory mandatory minimum sentence if he proves to the Court by a preponderance of the evidence that he satisfies five criteria." Contreras v. United States, No. 05-CV-9022, 02-CR-1451, 2006 WL 2819644, at * 3 (S.D.N.Y. Sept. 29, 2006) (citing United States v. Nuzzo, 385 F.3d 109 (2d Cir. 2004); see also United States v. Conde, 178 F.3d 616, 620 (2d Cir. 1999) (stating that a petitioner "has the burden of proving that he meets all of the criteria of the safety-valve provisions."). Pertinent to the Court's decision, the fourth of the requisite criteria states that "the defendant was not an organizer, leader, manager, or supervisor of others in the offense and was not engaged in a continuing criminal enterprise." See U.S.S.G. § 5C1.2(a)(4).

As discussed above, Petitioner conceded in the Plea Agreement that he "acted as an organizer, leader, manager, or supervisor of criminal activity." (Plea Agreement ¶ 2.) Petitioner has provided no explanation as to why the Court should now reject this concession and accordingly has not met the criteria of Section 5C1.2(a)(4). See Pimienta-Rosado v. United States,

No. 01-CV-4096, 2002 WL 398813, at *4 (E.D.N.Y. Jan. 11, 2002) ("Of course, the court's conclusion that [petitioner] was a supervisor rendered him ineligible for safety valve consideration."). Further, the Court notes that the safety-valve provision, if proven, allows a petitioner to avoid a mandatory minimum sentencing structure. U.S.S.G. § 5C1.2(a). In this case, as set forth in Petitioner's Plea Agreement, his conviction carried no mandatory minimum sentence. (See Plea Agreement ¶ 1.)

IV. Ineffective Assistance of Counsel

Petitioner claims that he received ineffective assistance of counsel when his lawyer failed to raise the safety-valve argument. (Pet. at 2.) For Petitioner to prevail on an ineffective assistance of counsel claim, he must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005) (quoting Strickland v. Washington, 466 U.S. 668, 688, 693, 104 S. Ct. 2052, 2064-65, 2067, 80 L. Ed. 2d 674 (1984)). When considering counsel's alleged errors, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. If a petitioner is able to establish an error of constitutional

11

magnitude, he must next establish that he was prejudiced by counsel's performance, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

To succeed on an ineffective assistance of counsel claim in the context of a guilty plea, "petitioner must show that the plea agreement was not knowing and voluntary, because the advice he received from counsel was not within acceptable standards." Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) (internal quotation marks and citations omitted). If a petitioner shows that he was subjected to objectively unreasonable representation, he must still show that he was prejudiced, in that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59, 106 S. Ct. at 370. Crucially, "[a] defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea." United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996).

It is well-settled that an attorney's failure to make a meritless argument does not constitute ineffective assistance of counsel. See United States v. Noble, 363 F. App'x 771, 773 (2d Cir. 2010) (summary order); United States v. Darling, 519 F. App'x

12

58, 60 (2d Cir. 2013) (summary order). Further, "[b]ecause [petitioner] could not satisfy all of the eligibility requirements of § 5C1.2, defense counsel's failure to pursue relief under this provision was not 'outside the wide range of professionally competent assistance.'" United States v. DeJesus, 219 F.3d 117, 123 (2d Cir. 2000) (quoting Strickland, 466 U.S. at 690, 104 S Ct. 2052.) Therefore, the Court finds that as Petitioner has not established that he was entitled to relief under the safety-valve provision of the Sentencing Guidelines, his attorney's decision not to pursue this argument does not amount to ineffective assistance of counsel.

## CONCLUSION

For the foregoing reasons, Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 (Docket Entry 70) is DENIED. Because there can be no debate among reasonable jurists that Petitioner was not entitled to habeas relief, the Court does not issue a Certificate of Appealability. 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir.2005).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Petitioner and mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: May  14 , 2019
       Central Islip, New York